Good afternoon. We've got one case for this afternoon. Ramirez v. Vintage Pharmaceuticals et al., number 17-1221 and 17-1226. We'll hear from appellant. Did you want to reserve some time? Yes, your honor. May it please the court. My name is Angela Vicari of Arnold and Porter K. Scholar. I represent defendants Vintage Pharmaceuticals, Endo Pharmaceuticals, Inc. and Endo Health Solutions, Inc. I'm here today arguing on behalf of all of the appellants and I would like to reserve four minutes for rebuttal. That would be great. Thank you. The district court erred in finding that plaintiffs did not propose to try their claims jointly under CAFA's mass action provision. The decision of the district court should be reversed for two reasons. First, these 113 plaintiffs in this action proposed to try their claims jointly under CAFA when they paid a single filing fee, filed a single complaint in the court of common pleas. So do you think there's a presumption that when you file a single lawsuit you take advantage of joinder rules to have all plaintiffs joined in one action, that there's a presumption that a joint trial is being requested? I do, and that's also by operation of the Pennsylvania Rules of Civil Procedure themselves. The joinder rules in Pennsylvania State Court are very clear. Plaintiffs may join in an action under section 2229A. I understand the rule. Is that presumption rebutted when the plaintiff says in the complaint that the case is being brought for pretrial management purposes? I don't think it is, Your Honor, and there are several reasons for that. First, it's only by operation of a severance that a jointly filed complaint can get to a place from where there's going to be a joint trial to where there are going to be separate trials. If we're looking at the language here that's been used by these plaintiffs, the language that appears in the complaint is that the claims are being tried together for purposes of case management on a mass tort basis. There are 113 plaintiffs in this case. I do believe that efficient case management would be absolutely imperative so that the case can proceed to trial in an orderly fashion. But there is nothing inconsistent about efficient case management in this particular action, and the joint trial that's been proposed by virtue of the fact that the plaintiffs have joined together, filed a single complaint in which they seek a jury trial and an award of damages to be determined at trial. What would be the purpose of saying in the complaint that the claims arise out of a common set of operative facts and which claims have been filed together for purposes of case management on a mass tort basis? What would be the purpose of including that language except to indicate that they're not looking for a joint trial? I can guess to you the purpose of that, and I think it's the signal to the court and the judge that's going to be administering the action in the trial court that they think that the claims should proceed to trial on an orderly basis, perhaps through some common written discovery perhaps of the plaintiffs. Oftentimes in cases involving a lot of plaintiffs, perhaps you use a plaintiff's fact sheet or standard discovery. Why is that an invocation of the mass tort rules under the CCP? I'm sorry? Why is that an invocation of the mass tort program in the CCP? Well, I think first the plaintiffs are at the outset invoking the Pennsylvania rules of civil procedure, and I do want to make a distinction between the rules of civil procedure in Pennsylvania State Court and the rules of the mass tort program. If you turn to the mass tort program, yes, there is a trial order that governs the procedure of the mass tort program, but there are a number of reasons why, one, those rules don't necessarily preclude a joint trial, and two, why those rules, we don't believe, are relevant here. Before you move, with respect to that, I mean, there are more than 20 different state laws that apply here. How would that be tried separately, even notwithstanding the mass tort order? Well, I think there would be any number of ways to have the claims be tried jointly as that term is used under CAFA. As other courts have held, there are certain issues that maybe they are common across all of the claims. A joint trial doesn't necessarily mean a single trial here, and because of that, the fact that there are 28 different state laws here doesn't preclude the possibility that there would be a joint trial on some or all perhaps common issues. Can we step back to some fundamentals? What is our standard of review here? I'm sorry, Your Honor. Given that we're looking for whether there was intentionality around a proposal for a joint trial, why shouldn't this be for clear error, given the district court's finding as to intent? Your Honor, I think the Kauffman case speaks to that, as do the other cases of the circuit in which the question is one of whether the court has subject matter jurisdiction over the action, and secondly, it's a statutory interpretation issue under CAFA. And the cases have gone so far to say that even applying the facts to the law and the statutory interpretation, that that is also subject to a de novo review. And we cited a number of cases in our reply brief to that effect. But isn't a finding as to intent a finding of fact? It may be, but even so, because of the nature of the finding, it's an issue of subject matter jurisdiction, and it's an issue of statutory interpretation ultimately, and therefore it's a de novo standard that applies. The court didn't hear testimony, right? This is all on paper, correct? That's correct. That's correct. So it is simply on the pleadings, on the complaint, and the notice of removal, the mass tort action motion. And what's the point in time that you want us to focus on? I gather part of your argument is that we shouldn't take account of the mass tort motion because you would have us look only at the point of the complaint being filed in establishing the subject matter jurisdiction here. Well, I think the complaint is certainly most relevant here. But the mass action motion, even though it wasn't served on the defendants, it was a paper that was apparently filed in the court below. But the content of that motion, I think, really reinforces the language that these plaintiffs used in the complaint. You see the same type of language appearing in the mass tort motion as appears in the complaint. So at the time of removal, yes, that motion was on file. It never served on the defendants. We certainly would have opposed because we don't think the program applies. So do you agree then that we can take account of developments up to the point of removal, that that's the relevant moment in time for us to assess whether there is jurisdiction under CAFA? I do think it would be acceptable for the court to look at the mass tort motion. But ultimately, I don't think anything in the content of the mass tort motion changes what plaintiffs have already said and what they've already proposed by virtue of filing a single complaint naming 113 plaintiffs and requesting a jury trial. The language in the mass tort motion also says jury trial requested in the singular, and it uses the same language that appears in the complaint about the cases being together. Have there been any developments in this matter after remand to the Philadelphia Court of Common Pleas? No, there hasn't been, Your Honor, other than the circumstances of this appeal. We did take some steps to alert the Court of Common Pleas that this appeal was taking place,  but other than that, there haven't been any developments in the district court. So I take it there's been no renewed application in the Common Pleas Court to have this enter the mass tort program? That's correct. I have a question for you. How does the Dark Cherokee case work into our analysis here? How should that influence our analysis? Well, I think the Dark Cherokee case speaks to the burdens here. I think the Supreme Court was quite clear in Dark Cherokee that CAFA cases are different than I think what they referred to as your mine run diversity case. There is no anti-removal presumption in a CAFA case, and I think we have to look very closely at the burdens and the burden shifting here that I think Dark Cherokee not only speaks to but further underscores what this court has already said about who bears the burden under CAFA. It's the defendant's initial burden to demonstrate that the basic requirements of CAFA are met. Here that would mean demonstrating that there has been a proposal by the plaintiffs that their claims be tried jointly on the basis of common facts, and I think we have done that here. The burden then shifts to the plaintiffs when dealing with the exception under CAFA to demonstrate that the case says that the case hasn't been consolidated or coordinated solely for pretrial proceedings. At no point prior to removal have the plaintiffs ever said that this is being done solely for purposes of pretrial proceedings, and in any event, there hasn't been a coordination or consolidation here. There's no need. There's been a joinder of claims in the filing of a single complaint. What is your authority for burden shifting there, treating it as an affirmative defense? Why doesn't that just define what it means to propose a joint trial, something that you have the burden to prove? Well, I think this court's decision in Kauffman is really the guidance there where the court compared the main language in CAFA and its exceptions to the same burden shifting that would apply outside of a CAFA case, and I think Kauffman speaks to that burden shifting quite clearly. Do you agree that you have the burden of proving that the plaintiffs proposed a joint trial? Yes, I think it is the defendant's burden to show in the first instance that those main provisions of CAFA have been satisfied, and here it's our position that they have proposed a joint trial. Here it's our position that they have proposed a joint trial by filing a single complaint, joining 113 plaintiffs. The plaintiffs are the masters of their complaints. There's any number of ways that they could have structured their filings to file three complaints. They could file three complaints, they could file 113 complaints, they could have filed two complaints. Would you agree that one of those ways also is going to be explicit in the complaint that they were filing these solely for purposes of pre-trial management? The issue of express disclaimer language has been addressed in other cases. Whether that language is effective, if it's used in a complaint, I think would be an issue of first impression. I don't believe that that has been considered before. I don't think that's what the plaintiffs have done here. When you look at the disclaimer language that other circuit courts have held is acceptable to meet the exception to CAFA, it's very different than the language that the plaintiffs used here. Let's assume the language they used here with you is akin to an invocation of the Masterwork Program. I take your point as to the limitation on the states, different states, precluding joint trial applies to a different type of case. But what about the provision in the CCP order that a maximum of three of the groups of cases may be tried? Wouldn't that, it may contemplate bellwether cases, but under Pennsylvania law it doesn't appear that those would necessarily have preclusive effect. If plaintiffs weren't amenable to stipulating to their preclusive effect. So wouldn't, doesn't that provision that is a maximum of three trials, if it does go into the program, doesn't that preclude a joint trial? Well, I think first we have to look at the effect of the Pennsylvania rules of civil procedure. Absent a severance in this particular case, these claims are being tried together. Now, when you get into the issue of the Masterwork Program, one of the requirements for coming into the Masterwork Program is that first a program gets created. And that gets done where you have multiple individually filed cases where there's some sort of coordination being sought so they can be administered together. The rules of the program are clear in that there shouldn't be consolidation of those cases unless all of the parties agree. So even the consolidation rule would open the possibility of there being a joint trial. There's been no severance here. There's been no attempt at a severance either by the plaintiffs or by the district court or in the state court. Well, Ferris, is this really the right time for severance? You have to go through discovery and all that. Is this really the right time for severance? I mean, there's any number of reasons why either the plaintiffs or, quite frankly, the defendants might seek a severance here. I think if you look at the plaintiffs in the complaint, you see the states from which they're from. I think there's only one plaintiff in this complaint that is from the state of Pennsylvania. So I do think, you know, even prior to the discovery phase, there's any number of reasons why one or both of the parties might want to pursue a severance. And I think it's telling that the plaintiffs haven't in any court sought a severance. Well, I think the problem with taking an approach in this case is along the following lines, that the plaintiffs in response to your removal have said, we're not proposing a joint trial, and the court's saying, all right, under those circumstances, they've expressed their intent not to propose a joint trial. We're going to remand without prejudice to your right to remove it when and if it becomes clear that they are proposing a joint trial. Well, at that point, Your Honor, I think it's too late. The time for plaintiffs to have made some sort of an express disclaimer that they weren't seeking a joint trial would have been prior to removal. What can be considered in connection with this removal is, what was the state of things at the time that this case was removed? And to your point, Judge Krause, what did we have? We had the complaint and we had a mass tort motion that was filed in Pennsylvania. In neither of one of those pleadings did the plaintiffs expressly disclaim an intent that they wanted a joint trial, which is what they were going to get by operation of the Pennsylvania Rules of Civil Procedure by filing this action in the Court of Common Pleas. Would you agree if the proposal for a joint trial were a legal impossibility and a court examining the complaint could determine that, that under those circumstances it shouldn't be treated as a proposal for a joint trial? Well, I think the case law that has been decided certainly in the Ninth Circuit and I believe the Seventh Circuit as well, the request for relief has to be made to a court that can grant relief. So I think that's correct. If the request for a joint trial gets made to a court that can't have a joint trial, then it's a null proposal. But if you look at the operation, again, of the Pennsylvania Rules of Civil Procedure here, which I think in the Ball case that we cited in our reply, really nicely shows the operation of those rules. There in Ball, the 43 plaintiffs joined together in a single complaint. That case was destined for a single trial until the trial court judge in Ball determined that for reasons of efficiency and fairness that four of those claims were going to be severed out and there would be a bellwether trial on four of those claims. But absent that action, in the court of common pleas, that case with 43 plaintiffs is heading towards a single trial. What do we do with the argument here by your colleagues on the other side of the aisle that while there are some claims that might involve common facts, that when there are claims of negligence, when there are some individualized determinations that would need to be made, that of necessity there would have to be individual trials? That's not what they've alleged in their complaint. Their paper's in connection with this appeal all of a sudden. I think they've gone from saying there are common questions and then they say there are no common questions. I do think the focus needs to be on the complaint and what they've said before remand. But even some common questions, if there's a trial on some common questions, either of liability or on damages, that for purposes of CAFA is enough to constitute a proposal that claims be tried jointly. It doesn't have to be all of the claims. I think the Seventh Circuit has said that even if there is a trial on certain issues that might be binding to other plaintiffs or individuals who are not perhaps part of a bellwether class or an initial trial, that that too is enough under CAFA to be enough to constitute a proposal for claims to be tried jointly. It doesn't necessarily have to be one trial. Granted, for the mass court portion of CAFA, in any event, there's not a predominance requirement. But can it really be that CAFA was intended to allow for removal where there is any common question, even a single common question, if the bulk of the case is going to require individualized determinations? In practice, wouldn't that mean that there was a trial of a common question and then more than 100 individual trials that were going on in federal courts? But I think the key is that all 100 of those plaintiffs would then be, in your hypothetical, would be bound by that trial on that single issue from that point forward. And in the legislative history of CAFA and also in the preface to CAFA, it did demonstrate Congress's intent to have cases removed out of the state courts and be heard by federal courts in the right circumstance. And here the requirements of the mass action provision, we believe, are satisfied. This case belongs in federal court, and it was Congress's intent to have a case such as this one be heard in federal court if the defendant's removed. Okay, thank you. We're here on rebel. Your Honors, my name is Keith Bogle. I represent the appellee in this case. We represent Melissa Ramirez and 112 other women who purchased these birth control pills manufactured by and packaged by the appellants in this case. You may know that the costs were reversed, and because of that, the women were taking week four instead of week one of their birth control pills. And the vast majority of our clients got pregnant and have live babies because of this. We filed a single action after a motion for class certification was denied in the Northern District of Georgia. Now, my counsel on the other side, she made reference to that this wasn't within the contemplation of CAFA for these sort of actions to be filed. In Parsons v. Johnson & Johnson, a case that I cited in our responsive brief, and this is at 749 Fed Third 879, it says the Court of Appeals for the Tenth Circuit said that Congress clearly contemplated situations where the claims of 100 or more persons would be deliberately filed and consolidated for pretrial purposes. And that's what we did in this case, Your Honor. We filed one action, but we made it very clear at the front that this was for case management purposes on a mass tort basis. It was our understanding that when it was filed, it was going to immediately go into the mass tort program within the Court of Common Pleas in Pennsylvania. When we learned that it did not automatically go into that mass tort program, we tried to resolve it over the telephone to get it within the mass tort program with Judge News in charge of the mass tort program in the Court of Common Pleas. And they instructed us to file a motion to correct the problem. And so we did. We filed that motion. You say you made it clear in your complaint, but even the one explicit reference that could be construed that way, that is the claims had been filed together with those of Judge Melissa Ramirez for purposes of case management on a mass tort basis. Mass tort is not in initial caps. It doesn't refer to or cite to the mass tort program. It doesn't state that it's for pretrial purposes, much less pretrial purposes only. Since plaintiffs are masters of their complaint, and we have before us a single complaint, all of the plaintiffs having been joined, which under Pennsylvania rules, with their permissive jointed rules, is to be treated as for purposes of a joint trial. And then multiple reference to a single trial and facts common to all counts and arising out of a common set of facts in the complaint. Why don't we have both the explicit references to a joint trial proposal and the implicit one, as Judge Anastasiou was asking earlier, where some circuits have recognized a kind of presumption of one complaint, one trial. Corral case in the 7th in particular. I'm sorry? The Corral case in the 7th Circuit in particular said exactly that. Well, Your Honor, the term case management, I think Judge Sanchez in the court below, he made clear in his order that's being appealed in this case that case management means pretrial, and it's synonymous. And he makes reference also in his order to the case management. I'm sorry, Your Honor. Please go finish. He makes reference also to the mass tort order dealing with case management orders and how that has to do with discovery deadlines, motion deadlines. So when we wrote the plaintiffs are filing these cases together with the name plaintiff, Melissa Monroe, for the purpose of case management on a mass tort basis, it was our understanding that with those words, with that filing, with the clerk accepting that filing, that that case would go into the mass tort program and would be subject to their rules, one of the rules being that no more than three cases can be jointly tried at the same time. If you agree that we're to look to the relevant court's rules in making a determination about whether the complaint reflects a proposal for a joint trial, what do we do with Rule 215, which provides for all cases filed in the trial division of the Court of Common Pleas shall be listed for trial in accordance with management procedures and for major jury cases, which this is designated as on the face of the complaint, all jury cases shall be listed for trial in accordance with the pertinent case management order. That seems to contemplate under the governing rules here that case management is up to and including the scheduling of a trial. Well, that's not the way it works in the mass tort program, and that was the program we were getting into. Why should we even be looking at those kinds of developments after the filing of the complaint? Well, it was before the removal, and I think we, in the prior argument before me, I think we sort of decided that everything preceding the removal is fair game. Now, the mass tort program order that you're relying on talks about the trial of cases, but here you have one case. It talks about Paragraph 7, any grouping of cases less than 8 and 10 in number. It doesn't talk about claims or plaintiffs. It talks about cases. Here you have one case. Well, I see it as 113 cases, 113 cases. It wouldn't be here if it was filed as 113 cases. It was filed as one case. It's 113 plaintiffs, 113 cases with 28 different state laws, and within the mass torts program, most three can be tried at the same time. Now, there's been no activity in the Court of Common Pleas since the remand order. Is that correct? Well, when the remand order was filed, there was a petition to sever the cases, I believe, filed by Patheon in the case, that because of the stay issued by this court, we had not responded to that yet. So I believe that is the case. How about the dark Cherokee case I mentioned to your adversary? Doesn't that sort of set some ground rules for us or at least maybe a presumption for us? I just don't read the case that way, Your Honor. I don't see it how it shifts the burden. I mean, all the other cases that I see within the various circuit courts establish that the burden of proof, even in CAFA cases, is on the defendants trying to remove. They have the burden of proof that removal is proper under CAFA and that the plaintiffs proposed a joint trial of 100 or more persons. But, I mean, didn't that case deal with a preference that, or a strong preference after looking at the Senate's legislative history, that interstate class actions should be heard in federal court and not kicked back to state courts? Right. There is some language in there like that, Your Honor. But I just don't read the case as a whole holding that it shifts the burden now to the plaintiffs. It's the defendants that have to prove. And not only that, but, Your Honor, when there is a doubt, when there is ambiguity, you're supposed to go towards remand. The presumption is go to remand. Well, in the mine run case, perhaps, or maybe this case not so much when it's a CAFA case. Yeah, all the CAFA cases that I read, it's always the burden on the defendant removing. Isn't that a different issue? I mean, the burden may be with the removing defendant, but doesn't Dart-Cherokee tell us expressly that the anti-removal presumption does not apply in CAFA cases? Yeah, there is some language to that effect. I just don't read the entire case that way, Your Honor. That is very close to the actual language of the Supreme Court, isn't it? Yeah, I just didn't read it that way, Your Honor. I'm sorry. I just didn't see it that way. Well, how else are we to read the language from Dart-Cherokee where the court said no anti-removal presumption attends cases invoking CAFA? That's pretty hard to sidestep. Yeah. The other case, though, is the Morgan v. Gate case that Judge Sanchez cites in his order. It deals precisely with that burden and how it's on the defense in the case. And there's a presumption against removal. There's a presumption in favor of remand. And when there's ambiguity, when there's doubt, the default is to remand. Which case? I'm sorry. This is Morgan v. Gate case. Yeah, I mean, that's a court of appeals case. It is, Your Honor. Just for starters. I mean, it's eight years before Dart-Cherokee. Yes, it is, Your Honor. And you would agree in any event that a recognition that a removing defendant bears the initial burden, for example, to establish those aspects of those facts that are necessary as a predicate for jurisdiction is not inconsistent with the idea that there's not a presumption against removal. That's just an assignment of where the initial burden is. Isn't that different than a presumption? That's true, Your Honor. The two can co-exist. That is true. Can we go back to whether – you place a lot of emphasis on the mass tort program, corrosion. And certainly there have been developments that trigger removal that were not present earlier that provide a basis for removal. It's clear under the statute that those are things that allow for removal. And, of course, a court reviewing jurisdiction as a result of that type of removal would need to consider some development that purportedly provided jurisdiction after the filing of the complaint. But that's not what we have here. Why in a case where the basis for removal was the complaint itself and was alleged in the complaint, why should we look to any point, any development beyond the complaint itself? Even with the jurisdictional announce, we would require there be a revelation, not simply some subsequent development, right? Right. Well, Your Honor, Judge Sanchez did that because it shows a clear intent on the part of the plaintiffs in this case. The clear intent was when we initially filed the case for case management purposes in the mass torts program, our intent was that it was going to go under the mass torts program. And when you look at the subsequently filed motion to be included in the mass torts program, it shows once again that our intent was to be within the mass torts program and to comply with the orders and the rules of the mass torts program. The most pertinent one of which is no more than three cases can be tried at the same time. So because it's an impossibility within the mass torts program of which we were going in until the defendants improperly removed the case, because it was an impossibility to have a joint trial of more than three cases, the defendants cannot prove, cannot sustain their burden of proving that the plaintiffs proposed a trial, a joint trial of 100 or more persons. That provision for no more than three trials seems to indicate there would be bellwether trials. Why, in looking at that, shouldn't we take the position, again, as some of our sister circuits have, that a bellwether trial with preclusive effect for the other plaintiffs would still constitute a joint trial and a proposal for a joint trial? Well, we didn't propose a joint trial. We proposed these cases were filed together only for case management purposes on a mass torts basis. And you're correct as far as bellwether trials where three could be tried at the same time, but there's no indication in the orders that there would be any preclusive effect against the defendant or for a plaintiff in the case. So I'm not sure I follow you in that, Your Honor. I would like to point out one more thing. We gave the other side a few extra minutes. We'll give you a little extra time if you have other things you'd like to get to. Okay. Thank you, Your Honor. Is there anything else you wanted to say? No, we were just saying we had time to talk. I'm sorry. I'm sorry. It wasn't clear. The only thing I wanted to bring to Your Honor's attention is this wrong move via Teva Pharmaceuticals at 731-Fed3-918. And in this case, they dealt with those phrases, for all purposes, inconsistent judgments, conflicting determination of liability, the same way the appellants in this case are playing on a trial, the word A, A judgment. What they wrote is the clear focus, reliance on these nine words to the exclusion of all else is inconsistent with the principle that any doubt about federal jurisdiction be resolved in favor of remand. And that's all I have to say, Your Honor. Okay. Which circuit is that from? That is... The Ninth Circuit? That is the Ninth Circuit. Okay. You would agree, though, that even accepting that defendants have the burden of proof on removal, that it's a preponderance of the evidence standard, right? It is, Your Honor. But as far as the burden of proof and whether or not Judge Sanchez committed error or not, I would contend that the clear error standard applies to his findings of fact, which have to do with plaintiff's intent in filing their case for purposes of case management on a mass court basis. You know, I asked your friend, I get what you're saying, but all Judge Sanchez had was a paper record in front of him. He said, I find intent. Couldn't we just as easily not find intent? We'll find intent for that matter. Right. It seems like an odd... I'm not sure that clear error should be what we should be using, but I don't know. What do you think? Well, there was extensive briefing by both sides. There was oral argument in front of him. He was provided not only with the complaint, but also the petition to have the action moved into the mass courts program. But there was no testimony as to the subjective intent. Are you suggesting that in defining whether there has been a proposal for a joint trial for purposes of CAFA removal jurisdiction, that we are not using an objective standard, that it requires findings of subjective intent by the plaintiff? Well, in this case, Judge Sanchez did find intent in reviewing all the materials. But why isn't that... Aren't you asking us, and perhaps the district court here, was conflating the very legal question before us, that is, is there a proposal for a joint trial with the question of, did plaintiffs intend for there to be a joint trial? His view is that we did not intend to propose a joint trial in the case. That was his view. But isn't that the legal question that was before the district court and that we need to decide, not a fact finding on the basis of an evidentiary hearing, for example? Right. I think proposal and intent goes a little bit deeper. I would contend that it is a finding of fact. It's a finding of jurisdictional fact. And I've cited a case in our brief in which findings of jurisdictional fact are subject to the clear error of standard. All right. Thank you, counsel. Thank you. We heard a lot about the concept of an intent versus proposal. I want to be clear here. The statute, CAFA does not speak to intent. The word intent doesn't appear in the statute. What's required by CAFA's basic requirements is that there be a proposal. Here there was plainly a proposal when the plaintiffs filed a single complaint. There was a proposal that those claims be tried jointly. Counsel also said that it was clear from the complaint that they weren't seeking a joint trial. Well, I don't think that's the case. You're saying it's explicit? It isn't explicit, is it? At best it would be implicit, right? Well, first, I think the language that they use is not an express disclaimer of a joint trial. The language that they did use says that they seek a jury trial and an award of damages, and I do think that that's significant here. When you look at the type of express language that other circuits have held, do constitute an express disclaimer or an adequate disclaimer of a joint trial. It's very different than the language that these plaintiffs have used here in this complaint. Again, what the plaintiffs have sought in this complaint, case management on a mass court basis, is entirely consistent with there being a single trial. If you look at the language in the Briggs case, for example, the petition that was followed by the plaintiffs in the Briggs matter to join an already existing California-coordinated proceeding in the Bayetta Products Liability litigation, the language used there was that the petitioners do not seek joint trials of any cases or plaintiffs, but rather all claims should be tried individually. I don't think that you can get any more expressed than that in disclaiming an intent for a joint trial. So say we accept that the disclaimer is not as explicit as it might be. Nonetheless, aren't we then confronted with a complaint that has aspects of it pointing in two different directions? You certainly make valid points about the references to a jury trial and the common set of operative facts. On the other hand, they do request that these be together for purposes of case management. It goes on to make a reference to on a mass court basis that would seem to be superfluous if it weren't some kind of implication of the mass court program. And it goes on to specify some aspects of the three categories of damages at least that are individual. So if we have a complaint where on the face of it there's evidence pointing both ways, then don't we have to step back and say, okay, who has the burden here? Put aside any anti-removal presumption, but just who has the burden? And with evidence pointing both ways, doesn't that mean that removal was not proper, that the case needs to be remanded? Your Honor, I think here to the extent that there's a tie, the tie goes to the runner, and the runner here is the appellants. The defendants bear the initial burden of demonstrating that the main requirements of CAFA's mass action provision are met. It's our position that those requirements, the proposal that there be a joint trial, we have demonstrated that there has been a proposal here, and the proposal is by virtue of filing the single complaint. The question then turns to have the plaintiffs done something that makes the exception to CAFA's main provision apply. And when you turn to that question, that's where the import of the burden shifting under this court's decision of Kauffman comes into play. The burden then shifts to the plaintiffs to demonstrate that the exception does not apply. Aren't you suggesting a different rule? Aren't you really suggesting that it's the plaintiff as the master of the complaint has to make clear in the complaint that a joint trial is not being proposed, so that if there's ambiguity, as there appears to be here, the case is properly removable? Yes, Your Honor. I mean, I think that that's another. Because we don't need to get to the exception. Well, I think you're right. I don't think we do need to get to the exception. The plaintiffs could have done or said any number of things that may have taken and removed this case, forget the language, but that would have made this case something other than a removable mass action. They didn't. They could have put perhaps words in the complaint that expressly disclaimed a desire for a joint trial. They didn't do that. They could have filed 113 or two or three complaints. They didn't do that here. What plaintiffs did was propose a joint trial when they filed a single complaint. One complaint, one trial. Okay. All right. All right, thank you. We thank counsel for their excellent briefing and argument on this really interesting case. We'll take the case under advisement, but we'll be back to you shortly. We'll have the clerk adjourn court. We would request, if counsel are amenable, to leave it sidebarred, just so we can greet you more personally, and thank you.